**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MICHAEL E. HICKS,

    Plaintiff,

vs.                                                Case No. 3:08-cv-840-J-32MCR

SECRETARY OF THE AIR FORCE,
In Official Capacity, and
UNITED STATES OF AMERICA

    Defendants.

## ORDER[1]

This case is before the Court on Defendants' Amended Motion to Dismiss or Alternatively, for Summary Judgment with Memorandum in Support (Doc. 10), Plaintiff Michael E. Hicks' (Hicks) response thereto (Doc. 11), Hicks' Motion for Summary Judgment and Supporting Memorandum (Doc. 12), and Defendants' Opposition to Plaintiff's Motion for Summary Judgment. (Doc. 15) The Court heard oral argument in this matter on June 22, 2009, the record of which is incorporated by reference.

**I. Undisputed Facts**

Hicks is a former military member of the Florida Air National Guard (FLANG) and former federal excepted technician previously employed by the FLANG under 32

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

U.S.C. § 709. (Doc. 1-2 ¶ 3; Doc. 15 at 2 ¶ 1) Hicks contracted his initial enlistment in the FLANG on March 14, 1970. (Doc. 10-2 at 5) Within the FLANG, Hicks held the rank of Technical Sergeant (TSGT). (Doc. 15 at 2 ¶ 1)

In 1996, pursuant to National Guard Regulation (NGR) 35-6 (31 May 1993), the FLANG considered Hicks and other retirement eligible FLANG personnel for retention as part of a selective retention program. (See NGR 35-6 at 2-1)[2] Under NGR 35-6, proper use of a selective retention program will preclude undesired aging of the force and overmanning in the officer and senior NCO grades; ensure a quality force; maintain stable promotion opportunities for lower grade personnel; and maintain a viable combat ready force for mobilization. (See NGR 35-6 at 1-1(a)). In June 1996, in accordance with NGR 35-6, the FLANG Selective Retention Review Board (SRRB or Retention Board), the body appointed by the state Adjutant General to consider retention or non-retention of FLANG members, recommended termination of Hicks' FLANG military membership, effective December 31, 1996. (Doc. 1-2 ¶ 8; Doc. 15 at 2 ¶ 2) Although the SRRB recommendation largely determines which members will be retained, the Adjutant General reviews it and makes the final decision. (See NGR 35-6 at 2-5(f), 3-1(a)) In Hicks' case, the Adjutant General approved the Retention Board's recommendation and informed Hicks of his non-retention via letter on June

---

[2]A copy of this regulation was provided by the parties at the June 22, 2009 hearing. The Court takes judicial notice of the regulation and makes it a part of the record as Court Exhibit 1. (See Doc. 19)

2

12, 1996. (See Doc 10-2 at 29) Hicks' non-retention and the termination of Hicks' military FLANG status required simultaneous termination of his civilian technician employment. (See 32 U.S.C. § 709; Doc. 12 at 1-2 ¶ 2; Doc.15 at 3 ¶ 4)

Under NGR 35-6, Hicks exercised his right to request that the Adjutant General of Florida reconsider the Retention Board's decision to non-retain him. (See NGR 35-6 at 3-3(a); Doc. 1-2 at 11 ¶ 24; Doc.10-4 at 92; Doc 15 at 3 ¶ 4) Hicks' appeal to the Adjutant General was unsuccessful. (Doc. 1-2 at 12 ¶ 25; Doc. 15 at 3 ¶ 4) Accordingly, on December 31, 1996, Hicks was honorably discharged from the FLANG. (Doc. 15 at 3 ¶ 4) At the time of Hicks' discharge, he was credited with twenty-six years, nine months, and two days total satisfactory service. (Doc. 10-2 at 5)

In April 1999, Hicks applied to the Air Force Board for the Correction of Military Records (AFBCMR) for review of his termination.[3] (Doc. 10-2 at 8; Doc. 15 at 3 ¶ 5) Hicks' application to the AFBCMR claimed that the FLANG had terminated Hicks'

---

[3] Defendants now contend that it was improper for Hicks to seek relief from the AFBCMR. Further, defendants argue that since Hicks' application was improperly before the AFBCMR this Court lacks jurisdiction to review the AFBCMR's conclusions under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. While this Court acknowledges the defendants' jurisdictional argument, it notes that this matter went before the AFBCMR two times over the course of six years. Yet, at no point during that time did the defendants challenge the jurisdiction of the AFBCMR and the AFBCMR issued two opinions on the merits. Thus, the Court assumes, without deciding, that the AFBCMR acted within its authority and will review the AFBCMR's decision under the APA.

3

military membership in retaliation for his proper, lawful actions as a technician labor union steward. In support of his position that anti-union animus led to his non-retention, Hicks submitted memoranda, written statements, sworn declarations, and other evidence. (Doc. 10-2 at 22-25) Hicks requested that the AFBCMR reinstate him into the FLANG, correct his military records to reflect that he was not separated from the FLANG, and award him all appropriate entitlements incident to such a correction.

In November 1999, as permitted by 32 C.F.R. § 865.4(a)(1), the Air National Guard issued an advisory opinion to the AFBCMR regarding Hicks' application that described the selective retention program which led to Hicks' non-retention. (Doc. 1-2 at 14 ¶ 33; Doc. 10-4 at 90-91; Doc. 15 at 3 ¶ 6) The advisory opinion indicated that Hicks was non-retained within the guidelines of the selective retention program and recommended denial of the relief sought by Hicks. (Doc. 10-4 at 91) Hicks' counsel wrote and submitted a response to the advisory opinion challenging the propriety of the selective retention program as applied to Hicks and alleging that the SRRB's decision was motivated by unlawful hostility to Hicks' technician union activity. (Doc. 1-2 at 14 ¶ 34) Due to a clerical error, Hicks' response to the advisory opinion never made it into Hicks' file.

On September 6, 2000, the AFBCMR arrived at a decision in the matter. After noting that it had received no response to the advisory opinion from Hicks, the

4

AFBCMR concluded, in relevant part, that:

> "Insufficient relevant evidence has been presented to demonstrate the existence of probable error or injustice. Considering all the evidence, assertions, and information offered by the applicant [Hicks], together with the evidence of record, applicable law and regulations, we find no convincing foundation to recommend granting the relief sought in this application. We took notice of the applicant's complete submission in judging the merits of the case; however, we agree with the opinion and recommendation of the Air Force office of primary responsibility and adopt their rationale as the basis for our conclusion that the applicant has not been the victim of an error or injustice. We are not persuaded that the SRB [SRRB] considered criteria other than the applicant's record. The Board [AFBCMR] recognizes the applicant's contributions to the Air National Guard, however, we find no evidence to support a finding that the decision to non-retain the applicant was not in accordance with the guidelines of the Selective Retention Program. Accordingly, in the absence of evidence to the contrary, we find no compelling basis to recommend granting the relief sought in this application."

(Doc. 1-2 at 14-15 ¶ 35; Doc. 10-4 at 101; Doc. 15 at 4 ¶ 7)

Upon receiving and reviewing the AFBCMR's September 2000 decision, which indicated that the AFBCMR never received or considered Hicks' response to the advisory opinion, Hicks' counsel resubmitted his response to the advisory opinion and asked the AFBCMR to consider his response and issue a new decision. (Doc. 1-2 at 15 ¶ 36; Doc. 15 at 4 ¶ 8) Once the AFBCMR discovered the clerical error and the fact that Hicks' initial response to the advisory opinion was not considered in its September 2000 conclusions, the AFBCMR agreed to issue a new decision in the

5

matter. On December 21, 2005, the AFBCMR issued a new decision concluding:

> "After again reviewing this application and the evidence provided in support of the appeal, we remain unpersuaded that the applicant's separation was erroneous or unjust. After considering counsel's rebuttal comments and the application in its entirety, to include the supportive statements provided by the applicant, we remain unconvinced the decision of the 1996 FLANG ANGUS NCO Selective Retention Review Board [SRRB] was based on factors other than a review of the applicant's record and the needs of the service, which are paramount in such considerations. While the supportive statements refer to bias on the part of several of the board members for individuals who participated in labor organization, in our estimation, the statements lack the specificity required to show a causal relationship between such a consideration and the decision to nonselect the applicant [Hicks] for retention. While there may have been external motives in the selective retention process, a factor not shown to our satisfaction, we remain unpersuaded the process itself was flawed, the board members abused their discretionary authority, or the applicant's substantial rights were violated. In view of the above, we find no basis on which to favorably consider the requested relief."

(Doc. 1-2 at 15 ¶ 36; Doc. 10-4 at 97; Doc. 15 at 4-5 ¶ 8)

On August 29, 2008, Hicks filed this action. (Doc. 1-2 at 1) Hicks requests that this Court remand this case to the AFBCMR for further consideration. Defendants argue that the Court should not disturb the decision of the AFBCMR because, in their view, the AFBCMR's decision is entitled to great deference, is supported by the evidence, is not contrary to law, and is not arbitrary or capricious. (Doc. 15 at 5-18)

## II. Legal Standard

This case is now before the Court on cross motions for summary judgment.[4] Summary judgment may be granted only when there are no genuine issues of material fact and judgment is appropriate as a matter of law. Fed. R. Civ. P. 56(c). Summary judgment motions are appropriate procedural vehicles for the Court to review administrative agency decisions. Fla. Fruit & Vegetable Ass'n v. Brock, 771 F.2d 1455, 1459 (11th Cir. 1985) (quoting Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2733, Vol. 10A at 366 (1983)).

Here, the Court reviews the AFBCMR's decision to deny Hicks' application pursuant to the "exceedingly deferential" standard of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Sierra Club v. Van Antwerp, 526 F.3d 1353, 1359-1360 (11th Cir. 2008) (citation and quotation omitted). Under that standard, this Court will set aside the AFBCMR's action only if the findings and conclusions undergirding its decision are found to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law or without observance of the procedure required by law. Id. at 1360. "The court's role is to ensure that the agency came to a rational conclusion, not to conduct its own investigation and substitute its own judgment for

---

[4]The defendants' motion was filed alternatively as a motion to dismiss. However, given the reliance of all parties on material outside of the four corners of the Complaint, specifically the Administrative Record, the Court treats the defendants' motion as a motion for summary judgment. See Fed. R. Civ. P. 12(d).

7

the administrative agency's decision." Id. (citation and quotation omitted). Thus, the Court looks only to whether the AFBCMR's decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (quotation omitted). Once the Court finds a rational connection between the evidence and the decision, the Court must defer to the agency's [here, the AFBCMR] expertise. Tackitt v. Prudential Ins. Co. of Am., 758 F.2d 1572, 1575 (11th Cir. 1985) (citation omitted).

Additionally, "[f]ederal courts restrict their review of military decision-making . . . out of deference to the special function of the military." Layman v. Harvey, No. 8:05-cv-2208-T-24-EAJ, 2007 WL 430678, at *4 (M.D. Fla. Feb.5, 2007) (citing Rucker v. Sec'y of the Army, 702 F.2d 966, 969 (11th Cir. 1983)). "Thus, federal courts are reluctant to intervene in matters involving the military." Layman v. Harvey, No. 8:05-cv-2208-T-24-EAJ, 2007 WL 430678, at *4 (M.D. Fla. Feb.5, 2007) (citing Chappell v. Wallace, 462 U.S. 296, 300 (1983) stating that civilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers; that relationship is at the heart of the necessarily unique structure of the military establishment). See also Cone v. Caldera, 223 F.3d 789, 793 (D.C. Cir. 2000) ("This deferential standard is calculated to ensure that the courts do not

8

become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence."). For Hicks to prevail, he must present clear and convincing evidence to overcome the strong presumption that duly appointed public officers have discharged their duties impartially and in accordance with the law. See NLRB v. Bibb Mfg. Co., 188 F.2d 825, 827 (5th Cir. 1951); Smith v. Dalton, 927 F. Supp. 1, 4-5 (D. D.C. 1996) (stating plaintiff has burden of providing cogent and clearly convincing evidence and must overcome the presumption that military administrators discharge their duties correctly, lawfully, and in good faith); Mozur v. Orr, 600 F. Supp. 772, 781 (E.D. Pa. 1985) ("[T]here is a strong presumption that the personnel involved in the decisionmaking process have faithfully discharged their duties . . . Such deference applies not only to the military but to any decisionmaker whose decision is to be reviewed under a standard that assumes discretion has been exercised soundly, in the absence of proof to the contrary.") (quotation omitted).

### III. Discussion

Hicks argues that the AFBCMR's conclusion was arbitrary and capricious. Particularly, Hicks contends that a remark made by his supervisor was improper, that the AFBCMR failed to consider and address the remark, and that the AFBCMR did not thoroughly consider all of the evidence that Hicks presented.

9

**a. Did the AFBCMR act within its discretion in finding that Hicks' supervisor's "derogatory" remark was not improper?**

Hicks alleges that a statement in his retention recommendation was derogatory. The statement, authored by Hicks' supervisor, Chief Master Sergeant (CMSgt) Tommy Vaughn (Vaughn) on April 12, 1996, appears on NGB Form 27 and reads:

> "Tsgt Hicks has demonstrated continuously his ability to be an excellent weapons loader, *his knowledge of other facets of the weapon system are average and will require additional work*. He has a positive attitude toward his position and the unit. He will continue to be an asset to his section and with increased knowledge will be capable of additional responsibility."

(Doc. 10-2 at 49) (emphasis added)

Hicks maintains that the inclusion of this "derogatory" statement in his retention recommendation was improper because it concerned matters that were not part of Hicks' military duties, and because it was substantially motivated by improper influence from members of the SRRB. (See Doc. 12 at 11 ¶ 20)

However, Vaughn's remark reflected his subjective assessment of Hicks' on-the-job performance. It is not irrational that on NGB Form 27, Vaughn, as Hicks' supervisor, would be required to evaluate or otherwise assess Hicks' knowledge of and ability to perform job-related responsibilities. Hicks concedes that the remark relating to his knowledge of other facets of the weapon system was accurate. (Doc. 1-2 at 7-8 ¶ 20; Doc. 12 at 6 ¶ 14) Also, the Administrative Record, Hicks' Complaint,

10

and Hicks' Motion for Summary Judgment all indicate that in his role as a technician it was possible, and on occasion happened, that, instead of working in his area of specialization, weapons loading, Hicks could be assigned to work in a different area, the Backshop. (See Doc. 10-3 at 30-36; Doc. 1-2 at 7-10 ¶ 20; Doc. 12 at 6-8 ¶ 14) Thus, the "derogatory" remark was true, offered by Hicks' supervisor in an evaluation, and related to Hicks' knowledge of and ability to perform tasks that he could be called upon to perform in his role as technician.

In its advisory opinion to the AFBCMR, the Air National Guard expressed that Hicks was recommended for non-retention in accordance with and after consideration of the relevant guidelines and regulations, particularly NGR 35-6. (See Doc.10-4 at 90-91) Under NGR 35-6, in making its decision, it was proper for the SRRB to consider Hicks' demonstrated capacities and potential for future contributions as well as Vaughn's remarks on Hicks' retention recommendation form, NGB Form 27. (See NGR 35-6 at 2-5(d)-(e)) Bearing in mind that Hicks' capacities and potential were subject to review under NGR 35-6 and that the remark was truthfully made by Hicks' supervisor in an evaluation of Hicks' abilities to perform tasks that Hicks could be called upon to perform as a technician, the Court can "reasonably discern" the basis for the AFBCMR's findings that the remark was not improper. See Zahnd v. Sec'y of Dept. of Agric., 479 F.3d 767, 773 (11th Cir. 2007) (stating a reviewing court will uphold an agency decision of less than ideal clarity if the agency's path may

11

reasonably be discerned).

Additionally, Hicks argues that the "derogatory" remark was improper because it was motivated by improper influence from members of the SRRB. (Doc. 12 at 6 ¶ 13, at 11 ¶ 20) Hicks alleges that "Hatok [SRRB member], Beaumont [SRRB member], and Sullivan [Vaughn's supervisor] suggested that Vaughn recommend to the SRRB that plaintiff [Hicks] not be retained." (Doc. 12 at 6 ¶ 13) In support of this allegation that SRRB members improperly attempted to influence the retention decision, Hicks offered a signed declaration by Vaughn. (<u>See</u> Doc. 10-2 at 47-48) According to Hicks, Vaughn's declaration "shows that three of the supervisor's [Vaughn's] superiors, including two Retention Board members, had urged him [Vaughn] to recommend that plaintiff not be retained." (Doc. 12 at 16)

Upon reviewing the Declaration of Tommy W. Vaughn, the Court is unpersuaded that Vaughn's declaration reveals the improper influence which Hicks asserts. Vaughn's declaration states, in relevant part,

> "One day before I had prepared my recommendations, my immediate supervisor, Captain Jeff Sullivan, came to my office. He asked me questions concerning who should or should not be retained in the FLANG. He asked me what I thought about various guard members, such as how many years they had served, whether they were holding up the upward mobility of younger subordinates, and whether they should be retained. As he asked me these questions we both walked a short distance to the office of CMSgt Raymond W. Beaumont. CMSgt Beaumont was there. CMSgt George E. Hatok also was there. They joined Cpt Sullivan

> in asking me similar questions about who should or should not be retained.
>
> My opinion was different from those of Cpt Sullivan, CMSgt Beaumont, and CMSgt Hatok. I believed that all of the guard members should be retained. *Cpt Sullivan, CMSgt Beaumont, and CMSgt Hatok led me to believe that they would not recommend retention of several guard members. I do not recall specifically what we said about Michael E. Hicks, but I believe he was one of the guard members about whom my opinion differed from those of Cpt Sullivan, CMSgt Beaumont, and CMSgt Hatok. I ended my participation in the discussion by saying that I thought all of the guard members should be retained and that I would recommend retention of all of them. I then left CMSGT Beaumont's office.*"

(Doc. 10-2 at 47) (emphasis added)

Vaughn's declaration does not identify or acknowledge any improper influence from SRRB members on Vaughn regarding Vaughn's retention recommendation as to Hicks. As Vaughn's declaration specifically states that Vaughn did not recall what was said about Hicks, Hicks has offered little more than speculation that SRRB members improperly attempted to influence Vaughn's retention recommendation decision. At best, Hicks has shown a mere disagreement between Vaughn and the others regarding whether Hicks should be retained.[5]

---

[5] NGR 35-6 at 2-3(h) does not, as Hicks contends, make very clear that "improper influence" on Vaughn by SRRB members is wrongful. (See NGR 35-6 at 2-3(h)(1)-(2) stating, "*board members will be free from any improper command or other influences in the performance of their duties*. . . Accordingly, no person may (1) Dictate, coerce, or attempt in any manner to dictate or coerce any vote *of any member of a board*; or (2) Influence, or attempt in any manner to influence*, the vote by any member of a board*. . ." ) (emphasis added). Thus, the regulation speaks of attempts by others to exert improper influence on SRRB members. Nevertheless, the Court will assume

13

**b. Did the AFBCMR consider the "derogatory" remark and was the AFBCMR required to specifically address the remark?**

Hicks argues that the AFBCMR failed to consider and address the important issue of whether the "derogatory" remark in his retention recommendation—namely, that Hicks' "knowledge of other facets of the weapon system are average and will require additional work"—was improper.[6] (Doc. 12 at 15) Accordingly, Hicks argues that the AFBCMR's denial of relief cannot be sustained.

In its September 2000 and December 2005 conclusions, the AFBCMR indicated that it had considered Hicks' application in its entirety, including all the evidence, assertions, and information offered by Hicks. (Doc. 10-4 at 97, 101) Indeed, the AFBCMR's decision to review the matter again in 2005 was precisely to ensure that it had considered all of Hicks' evidence and positions. That the AFBCMR did not specifically address the "derogatory" remark is of no moment. The AFBCMR need not address in its opinion every single point that Hicks presented. See Zahnd v. Sec'y of

---

that it would also be improper for SRRB members to have exerted improper influence on Vaughn's recommendation. While Hicks has offered the Declarations of Terry Garnett and Raul Toro (Doc. 10-2 at 73-74) as evidence that Vaughn told them he was pressured to recommend Hicks' non-retention, such statements by third parties cannot contradict Vaughn's own statement on the matter.

[6]In this section, Hicks does not deal directly with the propriety of the remark, but rather whether the AFBCMR actually considered the remark in arriving at its conclusion and whether the AFBCMR's failure to specifically address the remark renders the AFBCMR's conclusion arbitrary and capricious.

Dept. of Agric., 479 F.3d at 772-74; Dibble v. Fenimore, 545 F.3d 208, 219 (2d Cir. 2008) ("Requiring agencies to give explicit notice of every piece of evidence that they consider and find unpersuasive would merely multiply the length of agency decisions, and the time taken in rendering them, with no significant increase in clarity or utility.").

### c. Was the AFBCMR's conclusion based on a balanced consideration of all the evidence and was the AFBCMR's path reasonably discernable?

All parties agree that the AFBCMR's written analysis and findings must be based upon a balanced consideration of all the evidence available and presented. However, the parties are in disagreement as to whether the AFBCMR considered all the evidence in arriving at its conclusion. Specifically, Hicks argues that the AFBCMR did not properly consider the evidence offered by Hicks which, according to Hicks, demonstrates that anti-union animus improperly led to his non-retention. (See Doc. 12 at 18-23) Hicks' position is based on his belief that there is no rational way that the AFBCMR could, after considering the evidence he presented, conclude that anti-union animus did not color the decision to non-retain him. (See id. at 20-21) Defendants counter that the AFBCMR properly considered all the evidence prior to making its conclusion, that the AFBCMR's path may be reasonably discerned, and that the AFBCMR's decision is not arbitrary and capricious and, accordingly, should be entitled to great deference. (See Doc. 15 at 7-18)

In its December 2005 conclusion, the AFBCMR stated that it had reviewed and considered the evidence that Hicks provided and the application in its entirety. (Doc. 10-4 at 97) The AFBCMR's conclusion specifically addressed the evidence offered by Hicks which demonstrated, according to Hicks, that anti-union animus improperly factored into the SRRB's decision to non-retain him. (Id.) ("[T]he supportive statements refer to bias on the part of several of the board members for individuals who participated in labor organization.") However, after consideration of the evidence, the AFBCMR determined that it did not show a causal relationship between the anti-union animus asserted by Hicks and the SRRB's decision to non-retain Hicks. (Id.)

Focusing on causation, the AFBCMR could reasonably conclude that only minimal weight, if any, should be given to the anti-union evidence that Hicks presented. For example, several of the statements that Hicks offered to demonstrate that anti-union sentiment improperly affected the SRRB's decision to non-retain him were made by CMSgt Poltis (Poltis). (See Doc. 1-2 at ¶¶ 10-12, 18) However, Hicks does not assert that Poltis was part of the SRRB that determined to non-retain Hicks. Additionally, other statements offered by Hicks were about matters not directed personally to Hicks or were made after the SRRB had already decided to non-retain Hicks. (See Doc. 1-2 at ¶¶ 13-17) Thus, the AFBCMR could have reasonably concluded, as it did, that Hicks' evidence did not demonstrate that anti-union animus improperly affected the SRRB's recommendation to non-retain him.

16

In sum, this Court finds that the AFBCMR adequately considered and addressed the evidence before it when rendering its decision. In light of the great deference that courts must provide military personnel decisions, the presumption that the public officials involved in this case discharged their duties lawfully and in good faith, and the fact that the AFBCMR's path can be reasonably discerned, this Court determines that the AFBCMR's decision to deny Hicks relief was not arbitrary and capricious, nor does it otherwise fail to meet the APA standards.

It is hereby:

**ORDERED:**

1. Defendants' Amended Motion to Dismiss or Alternatively, for Summary Judgment with Memorandum in Support (Doc. 10) is **GRANTED**.

2. Plaintiff Hicks' Motion for Summary Judgment and Supporting Memorandum (Doc. 12) is **DENIED**.

3. The Clerk shall enter judgment in favor of defendants the Secretary of the Air Force and the United States of America and against plaintiff Michael E. Hicks and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 14th day of July, 2009.

*[signature]*
TIMOTHY J. CORRIGAN
United States District Judge

smm.

Copies to:

Counsel of Record